21-868-cv
*Ali v. Westchester Medical Center*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of July, two thousand twenty-two.

PRESENT:     Pierre N. Leval,
                    Denny Chin,
                    Steven J. Menashi,
                         *Circuit Judges.*

_____

Dr. Amro Ali,

         *Plaintiff-Appellant,*

     v.                                                              No. 21-868-cv

Westchester Medical Center, New York Medical College,

         *Defendants-Appellees.*

_____

*For Plaintiff-Appellant*:                ROBERT W. SADOWSKI, Sadowski Katz LLP, New York, NY.

*For Defendants-Appellees*:          PAUL F. MILLUS (Daniel B. Rinaldi, *on the brief*), Meyer, Suozzi, English & Klein, P.C., Garden City, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Amro Ali filed suit against Defendants-Appellees Westchester Medical Center ("WMC") and New York Medical College ("NYMC"). Ali alleged that the defendants discriminated against him based on national origin and age, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000a *et seq.*, and the New York State Human Rights Law ("NYHRL"), N.Y. Executive Law § 290 *et seq.* Following discovery, the district court granted the defendants' motion for summary judgment. Ali now appeals. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

2

## I

We view the facts in the light most favorable to the non-moving party. *Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003). Ali was born in Egypt in 1971 and received his medical degree in 1995 from Alexandria University in Alexandria, Egypt. In 1998, Ali passed Step 1 and Step 2 of the United States Medical Licensing Examination ("USMLE"). It would not be until April 2018 before Ali passed Step 3. Ali eventually moved to the United States, where he worked as an Associate Research Scientist at New York University School of Medicine ("NYU") from 2011 to 2015.

In 2015, Ali met Sansar Sharma, a professor of ophthalmology, biology, and anatomy at NYMC, a nonprofit medical school that shares a campus with WMC in Westchester County, New York. Around this time, NYMC had been placed on academic probation by the Accreditation Council for Graduate Medical Education ("ACGME") because it did not produce enough scholarly research. To boost NYMC's scholarly output, Sharma proposed to Ali that he join NYMC as a volunteer researcher. According to Ali, Sharma promised Ali a spot in NYMC's ophthalmology residency program. Ali also testified that around this time,

3

Thaddeus Wandel, the Resident Training Program Director at NYMC, told Sharma that Ali would receive a residency position in exchange for his research.

Ali left his paid position at NYU and started volunteering at NYMC in December 2015 and officially joined NYMC's faculty in February 2016 as a volunteer faculty member. He made this career move with the expectation that he would eventually become an ophthalmology resident at NYMC.

At Wandel's suggestion, Ali applied for an ophthalmology residency position at NYMC in November 2016 through "The Match." The Match is a formal process in which applicants apply for residency positions at medical institutions and the institutions rank applicants for selection to their residency programs. Wandel testified that due to Ali's poor Step 1 score, Ali would not have passed the first screening evaluation for receiving an initial interview at NYMC. Using their influence at NYMC, Wandel and Sharma pushed Ali's application past the initial evaluation, allowing Ali to interview for the residency position.

Before Ali's interview, Wandel "jokingly questioned [Ali's] ability to wake up in the middle of the night if he were a resident." App'x 950. Wandel also stated that Ali looked older than he really was.

4

After the interview, Wandel informed Ali that he could not rank Ali high on NYMC's selection list for The Match. Wandel explained that Eric Rosenberg—the resident representative—reported that the residents who interviewed Ali thought that he would not work "smoothly with the group of residents compared to the other people who are in the applicant pool." App'x 703. Ali did not match into NYMC's ophthalmology program.

In April 2017, a resident in NYMC's ophthalmology program dropped out, creating a vacancy for another resident in the program. Ali applied for the vacancy outside The Match but was rejected. Ali testified that Wandel told him that he would need to pass Step 3 of the USMLE because Fredrick Bierman, the Director of Graduate Medical Education at NYMC, required graduates of international medical schools to pass Step 3 before entering a residency program. Ali took Step 3 in April 2017 but did not pass. He eventually passed Step 3 in April 2018. By that time, the position had already been filled, and Ali did not receive a residency spot.

## II

"We review a district court's grant of summary judgment *de novo* and will affirm if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Loreley Fin. (Jersey) No.*

5

*3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (internal quotation marks omitted). In determining whether there are genuine issues of material fact, we are "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry*, 336 F.3d at 137.

Title VII makes it unlawful for an employer to "fail or refuse to hire … or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2. The NYSHRL makes it unlawful to refuse to hire or employ an individual because of the individual's age or national origin. N.Y. Exec. Law § 296. Title VII claims are evaluated under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The same framework generally applies to NYSHRL claims. *See Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008).

Under that framework, the plaintiff must first establish "a *prima facie* case of … discrimination by demonstrating that (1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances

giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019). Until the employer provides an explanation for the adverse employment action, the burden on the plaintiff with respect to showing circumstances giving rise to an inference of discrimination is "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). If the plaintiff makes a *prima facie* case, the "burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its policy or action." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019). "If the employer puts forth a legitimate, non-discriminatory justification, the presumption drops out of the analysis and the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination." *Id.* at 107-08.

## A

We begin with Ali's claim that the defendants discriminated against him based on national origin in violation of Title VII and the NYSHRL. This claim fails because there is no evidence that Ali's rejection from the residency program "occurred under circumstances giving rise to an inference of a discrimination" based on national origin. *Menaker*, 935 F.3d at 30. The evidence on which Ali

7

principally relies is Bierman's requirement that graduates of international medical schools pass Step 3 before beginning their residency. To be sure, this requirement departs from NYMC's official policy, which evidently provides that residents must pass Step 3 by the end of their second year of residency. *See* App'x 798-99. But the purported requirement was based on having received a medical education at a foreign school, not on an applicant's foreign nationality or origin, and therefore did not constitute discrimination on the basis of national origin.

**B**

With respect to age discrimination, the defendants met their burden of articulating a "legitimate, non-discriminatory reason" for Ali's poor ranking. *Lenzi*, 944 F.3d at 107. The reasons given were that Ali had poor Step 1 scores and that the residents who interviewed Ali said that Ali would not work smoothly with the other residents.

Given that showing, the burden shifts to Ali to "establish, by a preponderance of the evidence," that the defendants' justification is a "pretext for discrimination." *Id.* at 107-08. Ali has failed to do so. Ali argues that the defendants fabricated the negative report because Rosenberg, who provided the report to Wandel, was supportive of Ali's residency application. But Rosenberg was not

8

communicating his own view of Ali; he was communicating the view of the residents who interviewed Ali. Rosenberg's personal support for Ali does not create a question of fact as to whether the defendants' proffered explanation is pretextual.[1]

* * *

We have considered Ali's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] As further evidence that the defendants' proffered explanation is pretextual, Ali cites his own deposition in which he testified that Rosenberg told him that "Wandel always lies." App'x 362. Because such evidence is inadmissible hearsay, Ali cannot rely on it in opposing summary judgment. *See Brink v. Union Carbide Corp.*, 210 F.3d 354 (2d Cir. 2000) ("[T]he evidence proffered by the party opposing summary judgment must be of a type that would be admissible at trial.").